```
FILED

JUN 2 1 2024

DOUGLAS E. WEDGE
CLERK, U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA
BY:_____DEPUTY
```


## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | |
| CHRIS MUDD, ) | Case No. MP-23-00103 SAH/JDL |
| ) | General No. 24-2 |
| Attorney. ) | |

### ORDER REGARDING ATTORNEY REPRESENTATION OF CHAPTER 7 DEBTORS

"Few matters before bankruptcy courts are as distasteful as the duty to examine transactions between a debtor and its attorney. . . . Fulfilling this duty, though unpleasant, is also one of the most integral parts of the bankruptcy system." In re Chris Pettit & Assocs., P.C., No. 22-50591-CAG, 2022 WL 17722853, at *8 (Bankr. W.D. Tex. Dec. 13, 2022). This Miscellaneous Proceeding was commenced because the structure of attorney client relationships between Chris Mudd ("Mudd") and the bulk of his chapter 7 debtor clients raised multiple red flags after investigation and review by the United States Trustee ("UST") and this Court. The exact claims raised are set forth in the Agreed Order Establishing Issues for Review and Determination [Doc. 2] (the "Agreed Order").

A compromise has been reached between Mudd and the UST, which will be approved. However, (i) the nature and extent of the statutory and rule violations identified in his attorney client relationships, and (ii) the proliferation of similar unpalatable practices by other attorneys representing chapter 7 debtors in the Western District of Oklahoma designed to generate more clients, thereby threatening the integrity of the system, mandates an order from the Court, sitting *en banc*, identifying the objectionable practices and clearly establishing prohibited practices in the context of attorneys' representation of chapter 7 debtors in the Western District of Oklahoma. This Order, which takes effect immediately, addresses such conduct and establishes benchmarks for attorney conduct in representing chapter 7 debtors in the Western District of Oklahoma, specifically the Court will address: (i) unbundled essential bankruptcy legal services;

(ii) bifurcated fee contracts; (iii) attorney disclosure to the Court; (iv) attorney disclosure to the client; (v) payment of filing fees in installments; and (vi) attorney advancement of filing fees.

## I.  ATTORNEYS REPRESENTING CHAPTER 7 DEBTORS CANNOT UNBUNDLE ESSENTIAL BANKRUPTCY LEGAL SERVICES.

This Court has long allowed counsel for debtors to determine the scope of the services they will provide to their bankruptcy clients.

> Limiting the scope of representation, or "unbundling" as it is sometimes called, has become increasingly popular in recent years as individuals in need of chapter 7 relief struggle to find ways to afford legal representation. Unbundling generally involves "limiting the scope of services that an attorney will provide – and dividing comprehensive legal representation into a series of discrete tasks, only some of which the client contracts with the lawyer to perform."

In re Mawson, No. BT 18-05012, 2021 WL 4073376, at *4 (Bankr. W.D. Mich. Sept. 7, 2021). Increasingly, bankruptcy courts are imposing an obligation on counsel hired by potential bankruptcy debtors to help their client achieve the goal of a fresh start by assisting them through the entire bankruptcy process with specific focus on representation for critical issues impacting the automatic stay and discharge rather than only selected steps which may lead to partial relief. In re Bowman, No. 19-04789-JJG-7, 2020 WL 504760, at *2 (Bankr. S.D. Ind. Jan. 30, 2020) (citing In re Collmar, 417 B.R. 920, 923 (Bankr. N.D. Ind. 2009)). The past few years have revealed the unfortunate truth about unbundled legal services for chapter 7 debtors – they provide little to no benefit to the debtor and often come at a significant cost to the debtor with no demonstrable increase in efficiency or expediency to the court process. See In re Bulen, 375 B.R. 858, 866 (Bankr. D. Minn. 2007).

Unfortunately, in what the Court views as an effort to increase their client base rather than truly assist financially strapped individuals, attorneys, including but in no way limited to Mudd, have stretched the bounds of reasonableness and ethics in limiting the scope of their services offered to chapter 7 debtors. What has resulted is a disparate array of bankruptcy legal services being provided by lawyers to potential and actual chapter 7 debtors in the Western District of Oklahoma with those providing "minimal" services for their set fee falling far short of providing the adequate representation to which their clients are entitled.

When debtors file for relief under the Bankruptcy Code, they seek a fresh start. See In re Roth, 594 B.R. 672, 677 (Bankr. S.D. Ind. 2018) (citing Lamar, Archer & Cofrin, LLP v. Appling, 584 U.S. 709, 138 S.Ct. 1752, 201 L.Ed.2d 102 (2018)). More specifically, debtors seek to "reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and clear field for future efforts, unhampered by the pressure and discouragement of pre-existing debt.'" Collmar, 417 B.R. at 923 (citing Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (U.S. 1991)). When debtors hire bankruptcy counsel, it becomes

2

counsel's "obligation to help their client achieve this goal and requires counsel to assist them through the entire journey through the bankruptcy process, not just at selected steps along the way." Collmar, 417 B.R. at 923.

Bowman, 2020 WL 504760, at *2. The opinion in Danvers Savings Bank v. Cuddy (In re Cuddy), 322 B.R. 12, 17–18 (Bankr. D. Mass. 2005), aptly summarizes the effect of unbundling by analogy:

> The image that has come to my mind most insistently while working on this opinion is this: A professional swim instructor takes on a new student with this understanding: You have paid me my initial fee. For that money I will lead you to the swimming pool, show you how to enter the water, and explain the basic elements of swimming. If, however, you should begin to drown, or if some other serious problem arises, I will leave you to your own resources unless you pay me more money.

Unfortunately, it has become routine in this district for some attorneys to exclude specific services from the scope of their representation of chapter 7 debtors including: reaffirmation agreements, motions for relief from stay, violations of the automatic stay, judicial lien avoidance, objections to claimed exemptions, compiling and forwarding information and documentation requested by the case trustee and the United States Trustee, and preparation of the schedules, statement of financial affairs, statement of intent, statement of monthly income, and employee income records. In this Court's view, such services are the minimal services reasonably expected and generally needed in routine chapter 7 cases just to keep the case from being dismissed or to otherwise obtain the totality of the benefits of filing bankruptcy, i.e. the discharge. Hodges v. Armada fdba Com. Collection Serv. (In re Hodges), 342 B.R. 616, 620 (Bankr. E.D. Wash. 2006). Whether these legal services are provided directly impacts the debtor's ability to obtain the proverbial fresh start by affecting the scope of the debtor's discharge and the exempt property the debtor retains subject to existing liens. In most circumstances, filing a bare bones bankruptcy petition (i.e. no schedules or statement of financial affairs, statement of intent, means test, etc.) is not justified, and counsel is essentially acting as a bankruptcy petition preparer. See In re Moore, No. 23-20744-RMB, 2023 WL 3853945, at *9 (Bankr. E.D. Wis. June 5, 2023), *appeal withdrawn sub nom.*, Seifert v. Moore, No. 23-CV-790-PP, 2023 WL 6961968 (E.D. Wis. Oct. 20, 2023) (citing In re Amstutz, 427 B.R. 636, 641 (Bankr. N.D. Ohio 2010)) (attorney who just completes petition and schedules is essentially a typist or bankruptcy petition preparer, and attorney fees for such services should be limited to that which can be charged by a bankruptcy petition preparer). In this Court, pursuant to Miscellaneous Order MO-2015-02, the presumptive reasonable and maximum fee that a bankruptcy petition preparer can charge and collect for preparation of "bankruptcy pleadings" (i.e. petition, schedules, statements, applications) is $150.00 per case, an amount far below what is being charged by Mudd and other chapter 7 debtors' counsel. There is no doubt counsel would not accept such a limitation.

3

As Judge Terry Michael of the Northern District of Oklahoma previously held, and this Court wholly agrees:

> Attorneys representing individual debtors in consumer cases filed under Chapter 7 of the Bankruptcy Code have certain essential duties they must perform. They must help debtors file the necessary petition, schedules, statements, and pleadings. They must attend the scheduled meeting of creditors. Most relevant here, attorneys representing consumer debtors must advise and assist their clients in complying with their responsibilities assigned by [11 U.S.C. § 521][1] of the Bankruptcy Code, including helping their clients decide whether to surrender collateral or instead to reaffirm or to redeem secured debts.

In re Minardi, 399 B.R. 841, 850 (Bankr. N.D. Okla. 2009). In good conscience based on the abuses it has seen, this Court can no longer allow counsel to "unbundle" their legal services without limits as such renders debtors "vulnerable and unrepresented at the exact moment they need professional legal advice, especially for routine and fully anticipated matters. . . . Counsel that are unwilling to undertake and follow through on such duties should not accept employment in a Chapter 7 case, or if currently employed, should withdraw from all further representation of the debtor." Minardi, 399 B.R at 851.[2]

Consequently, thirty days from the date of this Order, the following services will be considered core, i.e. mandatory, services that must be provided by an attorney accepting representation of a client who desires to file a chapter 7 case.

1. An initial meeting with the attorney, not just a member of the attorney's staff, to ascertain whether filing bankruptcy is the appropriate relief, to determine under

---

[1] Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy Code, Title 11 of the United States Code.

[2] See Moore, 2023 WL 3853945, at *6 (citing In re Kincaid, No. 19–70433, 2021 WL 5858895, at *24 (Bankr. C.D. Ill. Dec. 9, 2021) (quoting Dignity Health v. Seare (In re Seare), 493 B.R. 158, 189 (Bankr. D. Nev. 2013))) ("Counsel for a debtor must, at a minimum, provide advice regarding the effect of a bankruptcy. 'A bankruptcy lawyer cannot assume that a client knows what a bankruptcy will or will not do for her[;]' that is why the advice of bankruptcy lawyers is sought."). A debtor's counsel must also guide the debtor through the process of filling out the petition and the required statements and schedules because "the attorney is the expert and cannot rely upon a client's limited understanding of what constitutes 'complete' or 'necessary' information[.]" Seare, 493 B.R. at 211. In addition, the negotiation of reaffirmation agreements is "among a set of core services that must be provided to a consumer debtor in order to provide competent representation in a Chapter 7 context." Minardi, 399 B.R. at 849.

4

which chapter to file, and to adequately inform the debtor of the consequences of such choice.

2. The attorney must assist the debtor with all of the debtor's obligations under Section 521 unless he or she is later permitted to withdraw. The attorney must prepare and file all documents necessary to commence the bankruptcy case which includes, at a minimum, the petition, the matrix, any application to pay in installments or waive the filing fee, the statement of attorney compensation, the Form B121 (Statement of Social Security Number), the credit counseling certificate and, if necessary, any application to waive or file late the credit counseling certificate. The attorney, unless allowed to later withdraw, must also prepare and file the debtor's schedules, statement of financial affairs, statement of intent, statement of current monthly income, the employee income records, and the statement of intention.

3. The attorney must attend the Section 341 meeting of creditors unless previously authorized to withdraw.

4. The attorney must advise and assist the debtor with any requests for turnover of documentation or information and any audit requests from the case trustee and/or the United States Trustee.

5. The attorney must advise and assist the debtor regarding any reaffirmation agreements. The attorney is not required to sign a reaffirmation agreement. However, an attorney's failure to sign the reaffirmation agreement will be taken as evidence the attorney does not find the reaffirmation agreement to be in the debtor's best interest and/or finds the reaffirmation agreement to impose an undue hardship on the debtor and will result in the reaffirmation agreement being disapproved without further notice or hearing.

6. The attorney must advise and assist the debtor regarding any motions to avoid judicial liens, motions for relief from the automatic stay and/or abandonment, and exemption planning and objections.

The original written retention agreement with the debtor must cover all of these core services. Attorneys are allowed to charge a debtor additional fees for services not contemplated by the original retention agreement and may also charge additional fees for services related to adversary proceedings, contested matters not covered above, and appeals.

I. **BIFURCATED CONTRACTS ARE NO LONGER PERMITTED.**

A prior decision of this Court, In re Milner, 612 B.R. 415, 432–32 (Bankr. W.D. Okla. 2019), *aff'd on statutory grounds, vacated as to reduction in fee*, CIV-20-33-PRW (W.D. Okla.

Apr. 29, 2024) summarizes the enigma faced by attorneys seeking to represent already cash poor chapter 7 debtors in need of a discharge in light of existing United States Supreme Court authority and atttorneys' attempt to work around the conundrum presented:[3]

> In <u>Lamie v. United States Trustee</u>, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), the United States Supreme Court held that a chapter 7 debtor's attorney fees could not be treated as an administrative expense, and therefore, could not be paid from estate assets. <u>Lamie</u>, 540 U.S. at 538–39, 124 S.Ct. 1023. Additionally, several Circuit Courts of Appeal have held that a pre-petition promise by a debtor to pay attorney fees post-petition is dischargeable in the debtor's chapter 7 case. <u>Rittenhouse v. Eisen</u>, 404 F.3d 395, 396 (6th Cir. 2005); <u>In re Fickling</u>, 361 F.3d 172 (2nd Cir. 2004); <u>Bethea v. Robert J. Adams & Assoc.</u>, 352 F.3d 1125 (7th Cir. 2003); and <u>In re Biggar</u>, 110 F.3d 685 (9th Cir. 1997)). The combination of these rulings results in an understandable reluctance on the part of attorneys to represent consumer debtors who cannot compensate them in full prior to filing of the bankruptcy petition. Not surprisingly, attorneys have pursued a myriad of machinations to get compensated by consumer debtor clients who are often in such dire financial straits that they are without sufficient funds to cover minimal living expenses, let alone pay significant attorney fees up front in order to obtain much needed bankruptcy protection and relief.
>
> [Attorney], like most chapter 7 debtors' counsel, seeks to avoid <u>Lamie</u> and the discharge of his fees in this case involving a debtor without the wherewithal to pay up front. [Attorney] does so by dividing his professional services and the payment of his compensation between two separate contracts, a contract entered into pre-petition for services to be completed and paid for pre-petition and a second contract for services to be completed and paid for post-petition. The bulk of his services under this bifurcated contract model are to be performed by [Attorney] on a

---

[3] "While the policy and social issues are certainly compelling, this Court's role is to focus on the specific facts and applicable law in the case before it, and not to render a decision based on policy, which is instead within Congress' purview." <u>Milner</u>, 612 B.R. at 420; <u>Benjamin R. Matthews & Assoc. v. Fitzgerald</u> (<u>In re Rosenschein</u>), 651 B.R. 677, 691 (D.S.C. 2023) (citing <u>In re Suazo</u>, 642 B.R. 838, 869 (Bankr. D. Colo. 2022), *aff'd*, 655 F. Supp. 3d 1094 (D. Colo. 2023)) ("While this Court recognizes the difficulty debtors face in retaining counsel to initiate a Chapter 7 case this Court 'cannot legislate and cannot just make up a new policy framework for chapter 7 debtor's counsel fees.'").

6

post-petition basis and, accordingly, the majority of the fees are earned and paid on a post-petition basis as well.

Enterprising but perhaps short-sighted attorneys turned to bifurcated contracts as a work around the Lamie conundrum. "The phrase 'bifurcation of fees' in bankruptcy refers to the practice of separating services provided to a client into services provided prepetition and postpetition. Some services are provided prepetition for one fee (whether a flat fee or based on an hourly charge), which is paid before the bankruptcy petition is filed, and then any additional services that are provided postpetition are charged for, and paid for, postpetition." In re Brown, 631 B.R. 77, 91 (Bankr. S.D. Fla. 2021). Milner concluded the Bankruptcy Code does not prohibit the use of bifurcated contracts provided one contract is actually entered into pre-petition and one contract is actually entered into post-petition, and the bifurcated contracts: (i) are in the best interest of the debtor; (ii) the attorney provides appropriate disclosures, options, and explanations; (iii) the client gives informed consent in writing; and (iv) the attorney's fees and costs are reasonable and necessary. Milner, 615 B.R. at 432–33.

As with unbundled legal services, after Milner, the Court took a hands-off approach and allowed attorneys to use bifurcated contracts but fully expected attorneys to heed the warnings regarding required disclosure and the reasonableness and necessity of attorney fees and expenses set forth in Milner. Unfortunately, a few attorneys ignored the warnings and directions of the Court, took advantage of chapter 7 debtors in dire financial circumstances in an effort to increase their case load,[4] and now cause the Court (sitting *en banc*) to pivot from its earlier Milner holding and prohibit bifurcated contracts going forward, effectively taking away a privilege for all chapter 7 debtors' counsel because of a few bad actors.

The Court had the unenviable job of delving into Mudd's attorney-client relationships to determine if bifurcated legal contracts violated the Bankruptcy Code and Bankruptcy Rules. Something inherent in the chapter 7 bankruptcy process is the conflict between the attorney's financial self-interest in getting paid up front, quickly, and, certainly, completely, the client's need for a discharge of debts and a fresh start. The Court tried to strike a balance between these competing interests in Milner. Unfortunately, the Court must now strike a new balance between an attorney's right to be paid and interests in creating a mechanism to ensure payment and the statutes and rules designed to protect the debtor against overreaching by attorneys. In re Baldwin, 640 B.R. 104, 109–10 (Bankr. W.D. Ky. 2021).

---

[4] "The use of such a fee arrangement is seen as a means for a consumer bankruptcy attorney to remain competitive among many such attorneys vying for clients in the same geographic area. These arrangements are designed to offer the would-be debtor the option to pay reduced or no fees up front by dividing the attorney's services in the case into two parts: prepetition services and postpetition services." Ridings v. Casamatta (In re Allen), 628 B.R. 641, 644 (8th Cir. BAP 2021).

7

In order to stop what appears to be the "wild west" in chapter 7 bankruptcy cases in this district, and to correct business practices which threaten the integrity of legal practice before the Court, bifurcated attorney contracts will no longer be allowed in this district in chapter 7 cases for the following reasons:

(i) Lawyers are not limiting the use of bifurcated agreements in chapter 7 cases where the debtor truly cannot afford to pay attorney fees except with a bifurcated contract and, therefore, only when it is in the client's best interests to use a bifurcated contract;

(ii) Lawyers are using bifurcated agreements in chapter 7 cases where the debtor will be placed in the circumstance of having greater monthly expense obligations post-petition than pre-petition, often when the debtor already has expenses exceeding income, and without the apparent ability to cover such increased expenses due to the new, post-petition monthly attorney fee payment;[5]

(iii) It has proven impossible for clear, accurate, and understandable pre-petition and post-petition contracts containing simple, plain, and correct disclosures to be drafted;

(iv) Attorneys are not adequately and accurately disclosing their bifurcated arrangements to the Court much less to their clients who typically do not possess a law degree or extensive backgrounds in contract negotiation and interpretation; and

(v) Bifurcated contracts are illusory at best[6] and effectively keep the cost of pre-petition services from being dischargeable by simply adjusting the amount paid pre-petition but with the same services for a skeletal bankruptcy filing being offered pre-petition across a variety of cases with the amount due pre-petition and post-petition varying depending upon the debtor's ability to pay pre-petition.

---

[5] The incongruity created by bifurcated contracts is the post-petition contract is a mechanism to get the debtor to pay attorney fees "they could not pay quite literally the moment before the petition is filed, adding a complex nondischargeable contract and exorbitant expenses to a debtor/client instead of the promised 'fresh start.'" Baldwin, 640 B.R. at 114.

[6] Notwithstanding delaying execution of the "post-petition" contract until after the bankruptcy petition was filed, the timing of when the clients physically sign the post-filing contract is less relevant when the clients are required to agree to the terms of the post-petition contract prior to the bankruptcy petition being filed. As a result, the pre- and post-petition agreements are not independent so the "bifurcated structure is illusory as the pre-filing and post-filing agreements are a unitary arrangement." Rosenschein, 651 B.R. at 691.

8

>Such circumstances then render the disclosures made to the client and the Court misleading and inaccurate and, therefore, in violation of Section 526.[7]

Moreover, the Court's Electronic Self-Representation system[8] ("ESR") is fully operational and provides significant assistance to *pro se* debtors. ESR allows debtors to prepare and file chapter 7 bankruptcy cases and successfully complete them to discharge without the assistance of counsel and, thereby, avoid attorney fees they are unable to pay.

### III. ATTORNEY DISCLOSURES TO THE COURT MUST BE ACCURATE AND NOT EVASIVE.

The relevant statute and rule governing the required disclosures for debtor's attorneys to the Court are:

>11 U.S.C. § 329(a) – Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

>Rule 2016(b), Fed. R. Bankr. P. – Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

A debtor's attorney's obligations set forth in Section 329 and Rule 2016(b) must be carefully reviewed and thoughtfully satisfied as "[t]he attorney's duty of disclosure is that of a fiduciary." SE Property Holdings, LLC v. Stewart (In re Stewart), 970 F.3d 1255, 1263 (10th Cir. 2020) (first citing Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472,

---

[7]Section 526 provides that a debtor's attorney may not make any statements or advise a debtor to make any statements in a document filed with the court that are untrue or misleading or that the attorney, upon the exercise of reasonable care, should have known to be untrue or misleading. 11 U.S.C. § 526(a)(2); United States Trustee v. Cialella (In re Cialella), 643 B.R. 789, 819 (Bankr. W.D. Pa. 2022); Rosenschein, 651 B.R. at 689. Any contract for bankruptcy assistance that does not comply with the material requirements of Section 526 "shall be void and may not be enforced." 11 U.S.C. § 526(c)(1).

[8]https://www.okwb.uscourts.gov/electronic-self-representation

9

480 (6th Cir. 1996); and then citing Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.), 655 F.2d 463, 470 (2d Cir. 1981)). Debtors' counsel must disclose in their Rule 2016(b) statement the nature of the full terms of their fee arrangement with the debtor; putting details regarding compensation in other filings but not the Rule 2016 statement is insufficient. Jensen v. United States Trustee (In re Smitty's Truck Stop), 210 B.R. 844, 849 (10th Cir. BAP 1997) (citing Arens v. Boughton (In re Prudhomme), 43 F.3d 1000, 1003 (5th Cir. 1995) (disgorgement ordered where applicant failed to disclose retainer in 2016 disclosure statement even though retainer was disclosed in SOFA)).

A contrary rule allowing piecemeal disclosure across filings "would nullify the § 329 and Rule 2016(b) disclosure requirements, which are designed to enable courts to oversee the fee arrangement between debtor and its counsel.[9] More importantly, it is not the court's job to search through the record to find all relevant facts relating to an attorney's employment." Smitty's Truck Stop, 210 B.R. at 849 (citations omitted).

> "Disclosure, disclosure, disclosure," should be every debtor's counsel's mantra, whether relating to the debtor's schedules and statement of financial affairs or to the attorney's own disclosures. See, e.g., In re Alcon, No. 09-41608 TK, 2010 WL 144408, at *2 (Bankr. N.D. Cal. Jan. 8, 2010). Section 329(a) requires an attorney representing a debtor in a bankruptcy case to file a statement of compensation paid or to be paid if the payment or the agreement to pay was made within one year of filing of the bankruptcy petition. 11 U.S.C. § 329(a). Correspondingly, Federal Rule of Bankruptcy Procedure 2016(b) requires a debtor's attorney "to disclose at the outset all fees paid or agreements regarding fees to be paid, and thereafter they must disclose post-petition transactions within fifteen[10] days." In re Stewart, 583 B.R. 775, 780 (Bankr. W.D. Okla. 2018)."

Milner, 612 B.R. at 433–34.

In order to comply with Section 329 and Rule 2016(b), "attorneys must file a 'Disclosure of Compensation of Attorney for Debtor(s),' otherwise known as Official Form B2030 [(the "2016 Statement")]." In re Kolle, 641 B.R. 621, 653–54 (Bankr. W.D. Mo. 2021). Form B2030 states in Part 1:

---

[9] "[G]iven Congress's directive, bankruptcy courts have an inescapable statutory duty to review fee arrangements. *So the bigger picture takeaway should be clear: counsel for debtors in bankruptcy proceedings should recognize that failures to disclose will not be taken lightly.*" Dordevic v. Layng, 62 F.4th 340, 343 (7th Cir. 2023) (emphasis added) (citing Bethea, 352 F.3d at 1127 (explaining that Section 329 "requires bankruptcy judges" to review compensation)).

[10] Rule 2016(b) was amended to change the deadline to file supplemental statements disclosing compensation from fifteen days to fourteen days. Rule 2016(b), Fed. R. Bankr. P., Advisory Committee Notes.

10

> Pursuant to 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:
>
>> For legal services, I have agreed to accept
>>
>> $\_\_\_\_\_
>>
>> Prior to the filing of this statement I have received
>>
>> $\_\_\_\_\_
>>
>> Balance Due
>>
>> $\_\_\_\_\_
>
> In Parts 2 and 3 of Form B2030, the attorney must disclose the source of the compensation paid or to be paid, respectively, and whether the source is the debtor or "Other (specify)."
>
> Part 4 requires attorneys to state whether they have shared the disclosed compensation with persons other than members and associates of their law firm and, if so, to attach a copy of any fee-sharing agreement.
>
> . . .
>
> Finally, Form B2030 requires the attorney to sign and date the form with this certification: "I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding."

Kolle, 641 B.R. at 653–54. Every attorney for a debtor, *whether or not the attorney applies for compensation*, must file, within 14 days after the petition date, or at another time as the court may direct, the 2016 Statement including whether the attorney has shared or agreed to share the compensation with any other entity, *and* supplemental statements must be filed within 14 days after any payment or agreement not previously disclosed. In re Welch, 647 B.R. 518, 526 (Bankr. D. S.C. 2022); Chris Pettit & Assocs., 2022 WL 17722853, at *14.

The consequences for failing to fully disclose compensation arrangements are harsh. The Tenth Circuit, stressing the importance of the disclosure obligation to the bankruptcy system as a whole, requires (i) the penalty to be imposed on an attorney for a failure to disclose must "sting," and (ii) full disgorgement of fees should be the default remedy such that there must be "sound reasons" for anything less. Cialella, 643 B.R. at 819 (citing Stewart, 970 F.3d at 1267).

Consequently, attorneys are directed to complete the 2016 Statement as follows:

1. It must clearly state the total amount of attorney fees promised, the attorney fees already paid, and the remaining fees to be paid.

2. Each source of the attorney fees must be disclosed (including identification of third parties through whom such fees may be paid).

3. If a potential debtor has paid the attorney the filing fee, this must be disclosed in the 2016 Statement as well as in the Statement of Financial Affairs ¶ 16.[11]

4. It is preferable but not mandatory to file the 2016 Statement with the bankruptcy petition rather than with the schedules and statement of financial affairs if filed after the petition date.

5. If any payments are received post-petition that are not included on the original 2016 Statement when filed, a supplemental Rule 2016 Statement must be filed within 14 days of payment.

## IV. ATTORNEY DISCLOSURES TO CLIENT MUST BE CLEAR AND CONCISE.

As a debt relief agency, counsel for consumer debtors must comply with Sections 526–528. Milner, 612 B.R. at 440 (first citing Milavetz, Gallop & Milavetz, P.A. v. U.S., 559 U.S. 229, 239, 130 S.Ct. 1324, 176 L.Ed.2d 79 (2010); and then citing In re Wright, 591 B.R. 68, 97 (Bankr. N.D. Okla. 2018)). "The purpose of incorporating the provisions in 11 U.S.C. §§ 526–528 was to require debt relief agencies to disclose specific information about the bankruptcy process to consumer debtors, whose frequent ignorance and confusion could subject them to easy deception." Milner, 612 B.R. at 440–41 (citing In re Rodriguez Perez, No. 15-06593, 2018 WL 3655656, at *6 (Bankr. D. P.R. July 31, 2018) (citing Conn. Bar Ass'n v. United States, 620 F.3d 81, 95 (2nd Cir. 2010))). Sections 526, 527, and 528 govern the relationship between "debt relief agencies" and "assisted persons", i.e. debtor's counsel and the consumer debtor, by regulating the mechanisms and procedures used to provide bankruptcy services to consumer debtors. Milner, 612 B.R. at 441 (citing Rodriguez Perez, 2018 WL 3655656, at *6 (citing Hersh v. United States, 553 F.3d 743, 747 (5th Cir. 2008))).

Section 526(c) provides the liability to which an attorney may be exposed as well as the enforcement mechanism to compel compliance with the debt relief agency requirements and restrictions. Rodriguez Perez, 2018 WL 3655656, at *8. Under Section 526(c)(1), if a contract between counsel and the debtor does not comply with the material requirements of Sections 526–528, it is void and cannot be enforced by anyone other than the assisted person. 11 U.S.C. § 526(c)(1). Section 526(c)(2) makes an attorney who acted intentionally or negligently in failing to comply with Sections 526, 527 and 528

---

[11]Based on an unscientific review of filed 2016 Statements and statement of financial affairs, it appears most lawyers are disclosing the payment of the filing fee appropriately. However, a few attorneys do not make any disclosure, and a few more attorneys only disclose the filing fee payment on either the 2016 Statement or the statement of financial affairs but not both.

12

liable for fees already received, actual damages, and reasonable attorneys' fees. 11 U.S.C. § 526(c)(2).

Milner, 612 B.R. at 441.

"The disclosure requirements set forth in section 528 are relatively simple and straightforward as it provides the bankruptcy attorney must provide the debtor client with a contract which 'clearly and conspicuously' explains 'the services [the attorney] will provide' and 'the fees or charge for such services, and the terms of payment.'" Rosenschein, 651 B.R. at 686 (citing Section 528(a)(1)(A) and (B)). "Section 528 specifically governs the required written contract between the consumer debtor and the attorney. It provides that a written contract between the debtor and its counsel must be executed not later than five business days after bankruptcy assistance was first provided to the debtor and before the petition is filed. The contract must clearly and conspicuously explain the services that will be provided to the debtor, the fees and costs for such services, and the terms of payment." Milner, 612 B.R. at 441 (citing Rodriguez Perez, 2018 WL 3655656, *7 (citing 11 U.S.C. § 528(a))); In re Jackson, No. 14-11415, 2014 WL 3722019, *3 (Bankr. W.D. La. July 23, 2014); In re Davis, 605 B.R. 658, 666 (Bankr. D. N.J. 2019) (the contract requirements of Section 528 must be completed within five days of the first date on which bankruptcy assistance services were provided to the debtor and prior to the filing of the bankruptcy petition).

Accordingly, attorney representation contracts for representation of chapter 7 bankruptcy debtors must:

1. Be in writing, contain simple language, and be free from legalese;

2. Clearly identify the debtor(s) and the attorney;

3. Clearly identify the legal fees to be paid to the attorney, by whom, and when;

4. Identify any filing fees and expenses to be paid by the debtor(s);

5. Be signed by both the debtor(s) and the attorney; and

6. If the agreement is in a fillable format, be completed in full and consistently throughout, with provisions not applicable to the subject representation marked through.

V. **PAYMENT OF FILING FEES IN INSTALLMENTS IS NOT AVAILABLE AS A MATTER OF CONVENIENCE TO DEBTORS.**

Rule 1006(b)(1), Fed. R. Bankr. P., provides that an application to pay a filing fee in installments must be signed by the debtor and state: "the debtor is unable to pay the filing fee except in installments." One of the curious facts discovered by the Court while reviewing Mudd's chapter 7 cases was the frequency with which he filed applications to pay the filing fee in installments on behalf of his clients.

13

Specifically, from a purely statistical standpoint given the unequivocal requirement of Rule 1006(b)(1) that installment payments are only authorized where the debtor verifies, under oath, his, her or their inability to pay the filing fee except in installments, Mudd has abused the bankruptcy system. In 2022, a total of 337 chapter 7 bankruptcy cases were filed with an application to pay the filing fee in installments in this district. Of those 337 cases, Mudd filed 244 of them – a remarkable 72.40% of such cases. Only 93 of such cases were filed by either another attorney or a *pro se* debtor, with *pro se* debtors filing only 65 of the cases, or 19.29%. Other than Mudd, the attorney with the next highest number of chapter 7 cases containing an installment application filed a total of 15 cases or 4.45% of the total. Moreover, out of Mudd's 345 chapter 7 cases filed in 2022, the 244 installment cases represent more than 2/3 of the total chapter 7 cases Mudd filed.

Mudd's installment application cases comprise 10.37% of the total chapter 7 cases filed in 2022 with *pro se* debtor installment application cases only comprising 2.76% of the total, with the next highest lawyer's installment application cases comprising only .64% of total chapter 7 cases filed in 2022. This analysis paints a compelling picture – there is no statistical way for Mudd to be the only lawyer with such an absurdly elevated level of clients who cannot pay the filing fee except in installments – especially when compared to *pro se* chapter 7 debtors.

And Mudd's filing behavior in early 2023 proves this point. In 2023 through April 11, 2023, a total of 76 installment application chapter 7 cases were filed – of which Mudd filed 43 and the next highest lawyer filed 6 installment applications. Of most interest is a change in Mudd's behavior after a hearing held on March 28, 2023, in which the Court stressed the statistical impossibility of Mudd being the only lawyer whose clients need to pay the filing fee in installments. Ater the March 28, 2023, hearing, Mudd has not filed one chapter 7 case seeking to pay the filing fee in installments.

This statistical impossibility poses a problem under Rule 1006(b)(1) which requires a debtor seeking to pay the filing fee in installments to file an application signed by the debtor stating that "the debtor is unable to pay the filing fee except in installments." Rule 1006(b)(3) further provides the filing fee must be paid before the debtor can make further fee payments to an attorney "or any other person" for services rendered to the debtor. <u>Wright</u>, 591 B.R. at 96. Quite simply, "[a] debtor is required to pay the filing fee prescribed by 28 U.S.C. § 1930 with the petition unless the debtor submits a signed application stating that the debtor is unable to pay the filing fee except in installments." <u>In re Denney</u>, No. 15-51918, 2018 WL 2325772, at *3 (Bankr. E.D. Ky. May 22, 2018) (citing Rule 1006(b)(1), Fed. R. Bankr. P.).

Attorneys and *pro se* debtors alike must be cognizant of the condition to paying filing fees in installments – the debtor must be otherwise unable to pay the filing fee. This is not something every debtor can legitimately claim, and the filing of an application to pay the filing fee in installments is an express representation to the Court of the debtor's inability to pay the filing fee except in installments. Ease or convenience to the debtor should not be considered in an analysis to file an application to pay the filing fee in installments. Rather, such applications can only be filed when the debtor is otherwise unable to pay the filing fee except in installments. In March 2023, Mudd admitted he often filed installment applications to simply help out his

14

clients. But to do so knowing the debtors could, but would rather not, pay the filing fee when the bankruptcy petition is filed, and allowing the debtor to sign the installment application and file it with the Court, is a blatant intentional misrepresentation to the Court in violation of Rule 9011, Fed. R. Bankr. P.

A further comment on installment applications – Rule 1006(b)(3) prohibits any further payments to an attorney until the filing fee is paid in full pursuant to the order allowing the filing fee to be paid in installments. Counsel is reminded, "[p]ursuant to Bankruptcy Rule 1006(b)(3), a debtor's attorney may not accept any payment until the filing fee has been paid in full. Additionally, when Debtor's attorney has collected the full filing fee from Debtor in advance, Debtor's attorney is not only not privileged to withhold payment of the filing fee and instead file an application to pay the filing fee in installments, but also has an affirmative obligation under Rule 1006 not to do so." In re Culver, No. 10-93189-MHM, 2011 WL 2971964, at *1 (Bankr. N.D. Ga. June 22, 2011). Failure to comply with such restrictions will not be tolerated.

## VI.     ATTORNEYS CANNOT ADVANCE THE FILING FEE.

The Court prohibits debtor's counsel from advancing the filing fee on behalf of clients for two reasons. First, Oklahoma Rule of Professional Conduct 1.8(e) provides:

> (e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

An attorney may advance costs with the repayment contingent on the outcome of the case *but not* where the repayment is not contingent on the outcome of the case. Brown, 631 B.R. at 103; see also Baldwin, 640 B.R. at 116. The Court is unaware of any attorney agreeing to be retained by a potential debtor on a contingency fee basis.[12]

Second, the filing fee is due upon the filing of the bankruptcy petition. As a result, the debtor's obligation to repay the filing fee to the firm is a prepetition obligation that is dischargeable. In re Suazo, 655 F. Supp. 3d 1094, 1112 (D. Colo. 2023); In re Shatusky, No. 8:22-BK-00131-RCT, 2022 WL 1599973, at *10 (Bankr. M.D. Fla. Mar. 18, 2022). An attorney advancing the filing fee with the expectation of repayment by the debtor post-petition violates Section 526 by advising the debtor to incur a debt "to pay for bankruptcy related legal services." Brown, 631 B.R. at 102–03. Moreover, since the debt arose pre-petition, any post-petition collection effort by the attorney will also violate Sections 362 and 524 (assuming the debtor obtains a discharge). Brown, 631 B.R. at 102–03; Baldwin, 640 B.R. at 115; Suazo, 655 F. Supp. 3d at 1112 (citing Suazo, 642 B.R. at 866–67).

---

[12] A contingency fee arrangement for a chapter 7 case, in any event, would not solve the payment dilemma facing chapter 7 debtors' counsel. A contingency fee agreement entered into pre–petition is a contingent unsecured claim which would be discharged in a subsequently filed chapter 7 case.

15

## **CONCLUSION**

Mudd and the UST have resolved the issues raised by the UST regarding Mudd's representation of chapter 7 debtors in 2020, 2021, and 2022, and the Court approves such resolution. The intent of this opinion is to not only set forth unacceptable practices for all practitioners but to also caution attorneys to take seriously the mandates of the Bankruptcy Code, the Bankruptcy Rules, and their ethical obligations.

_____
SARAH A. HALL
CHIEF BANKRUPTCY JUDGE

_____
JANICE D. LOYD
BANKRUPTCY JUDGE